**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

US HEALTH DRUGSTORE, INC., a Florida
Corporation

     Plaintiff,                             Case No.:

v.

PHARMA DEVELOPPMENT SAS, a French
société par actions simplifiée; and MARIO
GIRON, an individual,

     Defendants.

_____/

## COMPLAINT

Plaintiff, US HEALTH DRUGSTORE, INC., a Florida Corporation ("UHD" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants, PHARMA DEVELOPPMENT SAS, a French société par actions simplifiée ("Pharma") and MARIO GIRON ("Mr. Giron") (collectively "Defendants"), and in support hereof states as follows:

## NATURE OF THE ACTION

1.    This action arises out of Defendants' deliberate interference with Plaintiff's exclusive rights in the A313 mark and Defendants' continued breach of multiple agreements governing ownership of the A313 mark, and the international distribution of and commercialization of goods bearing the A313 mark, which provides the basis for Plaintiff's claims for declaratory judgment, breach of contract, promissory estoppel, and injunctive relief.

2.      Defendants' ongoing attempts to undermine Plaintiff's exclusive rights has caused and continues to cause irreparable harm to Plaintiff's business, and to the brand, reputation, and goodwill of the A313 mark.

3.      As a result, Plaintiff seeks both monetary and injunctive relief for the irreparable damages that Plaintiff has suffered and continues to suffer as a result of Defendants' continuing harmful conduct.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of a State and citizens or subjects of a foreign state.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Further, Plaintiff brings this action in this judicial district pursuant to the Choice of Forum provisions of the agreement giving rise to this suit, designating the Southern District of Florida as the choice of forum.

6.      This Court has personal jurisdiction over Defendants because they entered into agreements in the United States and conduct business activities in this District, including the activities that give rise to the claims asserted herein. The claims asserted herein arise out of and relate to such actions and this Court's exercise of specific personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

## THE PARTIES

7.      Plaintiff, UHD, is a Florida corporation with its principal place of business located in Florida.

8.      Defendant, Pharma, is a company organized under the laws of France with its principal place of business in France, and conducts business with UHD in this District, including executing the agreements that give rise to the instant action, as further described herein.

9.      Defendant, Mr. Giron, is the President of Pharma and, upon information and belief, resides in France. Mr. Giron conducts business with UHD and otherwise directs or controls the business relationship of Pharma with UHD in this District both physically in person, as well as remotely, including the acts that give rise to the to the instant action, as further described herein.

## STATEMENT OF FACTS

10.      UHD is a premier global retailer and distributor specializing in the international imports of French pharmaceutical skincare and beauty products, with a primary focus on the United States market.

11.      Among UHD's top products is a pharmaceutical-grade skincare product marketed under the name A313, known for its anti-aging properties ("A313 Goods").

12.      All A313 Goods bear the A313 mark, which is registered in standard characters with the United States Patent and Trademark Office ("USPTO") under U.S. Trademark Registration No. 5,986,240 (the "'240 Registration"), together with all common law rights in the A313 name and its various stylized forms (collectively the "U.S. Mark"). A true and correct copy of the United States Registration Certificate for the U.S. Mark is attached hereto as **Exhibit A.**

13.      The federal registration with the USPTO for the U.S. Mark is further detailed below:

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 5,986,240 | A313 | Feb. 11, 2020 | Class 03: Cosmetics and cleaning preparations |

14.     In or around July 26, 2023, UHD and Pharma (collectively the "Parties") entered into a distribution agreement (the "Draft Distribution Agreement"), appointing UHD as the exclusive distributor of A313 Goods within the United States and its territories (the "U.S. Market"). A true and correct copy of the Draft Distribution Agreement is attached hereto as **Exhibit B.**

15.     Although the Draft Distribution Agreement had been executed, the Parties continued negotiating certain terms and sought to amend those terms.

16.     As a result of the continued negotiations, on August 21, 2023, the Parties made revisions to and re-executed the Draft Distribution Agreement, to form the final distribution agreement (the "Distribution Agreement"), which again appointed UHD as the sole distributor of A313 Goods in the U.S. Market. A true and correct copy of the Distribution Agreement is attached hereto as **Exhibit C.**

17.     In addition to granting exclusivity, the Distribution Agreement further vested rights in and required the assignment of the U.S. Mark to UHD; importantly, Section 11.02 of the Distribution agreement provides that:

> Simultaneously with the execution of this Agreement, [Pharma] shall execute a Trademark Assignment Agreement . . . to be filed with the U.S. Patent and Trademark Office. Such Assignment shall transfer ownership of any and all Trademarks for the "A313" brand from [Pharma] to [Pharma] and [UHD].

Distribution Agreement, Section 11.02.

18.     Accordingly, Pharma executed the required trademark assignment, which irrevocably conveyed all rights in the U.S. Mark (the "First Assignment"), granting Plaintiff ownership rights in the U.S. Mark together with Pharma. A true and correct copy of the First Assignment is attached hereto as **Exhibit D.**

19.     Although Pharma retained ownership of the U.S. Mark in the First Assignment, its rights were limited by UHD's exclusivity, as established through the corresponding Distribution Agreement that was executed simultaneously with the First Assignment.

20.     That is, the Distribution Agreement limits Pharma's right in the U.S. Mark by expressly prohibiting Pharma from engaging in business in the U.S. Market, as Section 2.01 of the Distribution Agreement states:

> [Pharma] shall not, directly or indirectly through any agents, representatives or distributors, except through [UHD], market, advertise, promote, sell, or distribute the Goods in the Territory.

Distribution Agreement, Section 2.01.

21.     Further establishing UHD's exclusive rights in the U.S. Mark and Pharma's limited rights in the same, the Distribution Agreement appoints UHD with the exclusive right to enforce the U.S. Mark, as Section 11.03 provides in relevant part:

> **[UHD] shall have the first right to institute and direct legal proceedings** against any third party believed to be infringing, misappropriating, or otherwise violating a Trademark owned by the parties hereto pursuant to Section 11.02 above and to defend the same from any claim of invalidity or unenforceability in connection therewith. **[Pharma] may, at [UHD]'s sole discretion, participate** in any such Enforcement Action as a co-plaintiff.

Distribution Agreement, Section 11.03 (emphasis added).

22.     UHD and Pharma agreed that the Distribution Agreement would be set for a 3-year term, with an automatic renewal for a consecutive 3-year term. *See* Ex C, Sections 12.01, 12.02.

23.     Thus, Pharma's initial retained ownership in the U.S. Mark under the First Assignment was merely to the extent that UHD's exclusivity, as established by the Distribution Agreement, expired, at which point both Pharma and UHD would have non-exclusive ownership of the U.S. Mark; however, as discussed in detail below, UHD's rights in the U.S. Mark have since been expanded upon and made permanent in subsequent agreements entered between the Parties.

24.     Furthering this understanding between the Parties, the First Assignment was promptly recorded with the USPTO, on July 27, 2023, which is one day after the execution of the Draft Distribution Agreement. A true and correct Copy of the Filing Receipt is attached hereto as **Exhibit E.**

25.     Moreover, the Distribution Agreement provides a procedure for each Party to terminate the Distribution Agreement.

26.     Critically, for Pharma to terminate the Distribution Agreement it must comply with Section 12.06 in its entirety, which sets forth the timing and requisite fee for termination.

27.     With regard to timing, Pharma is only permitted to terminate the Distribution Agreement, "at the end of the Term" by providing written notice no less than 30 days prior to the expiration of the term. *See* Ex C, Sections 12.06.

28.     Further, should Pharma terminate the agreement timely, it is required to pay a termination fee, as Section 12.06 of the Distribution Agreement provides that:

> If [Pharma] elects to terminate the Agreement pursuant to this Section 12.06, **[Pharma] shall pay to [UHD] an amount equal to the total sales made by [UHD] under this Agreement during the preceding twelve (12) months.**

Distribution Agreement, Section 12.06 (emphasis added).

29.     Since the Distribution Agreement automatically renews upon expiration of the term, should either of the Parties fail to properly terminate, the Distribution Agreement will renew for another three years pursuant to Section 12.02.

30.     Moreover, the Parties entered the Distribution Agreement with the intent to ensure the success of the distribution relationship established therein.

31.     As part of ensuring its success, Section 5.01 of the Distribution Agreement contemplated the establishment of sales channels for the A313 Goods, requiring that Pharma, *inter alia*, assist UHD in establishing new accounts and in maintaining existing accounts.

32.     Further, the Distribution Agreement obligates Pharma to continue to make available and sell the A313 Goods to UHD for the term of the agreement. *See* Ex C, Section 6.01.

33.     Following the execution of the Distribution Agreement, the Parties acted in conformity with the obligations and rights established under the Distribution Agreement and First Assignment.

34.     Acting under the Distribution Agreement, UHD assumed sole responsibility for the strategic growth and protection of the U.S. Mark, expending substantial internal resources to increase the mark's value and the profitability of the products.

35.     Specifically, UHD secured and managed sales channels through major online retail platforms, including TikTok, Amazon, and Walmart, increasing both the brand's recognition with consumers and the number of sales of A313 Goods.

36.     To assist UHD in securing these sales channels, Pharma issued official letters to major online retailers and social media platforms, expressly confirming that UHD holds the exclusive rights to the U.S. Mark. True and correct copies of these Letters to Third Parties are attached hereto as **Composite Exhibit F.**

37.     With the increase in sales and notoriety with consumers, and thereby the increased demand for A313 Goods, UHD was able to raise the price of the A313 Goods, which in turn increased the profit margins for both UHD and Pharma, by allowing UHD to pay Pharma a higher wholesale rate relative to other distributors in other territories, as demand and sale prices increased abroad for Pharma and other such distributors to benefit.

38.     In addition to making the A313 Goods widely accessible in the U.S. Market, UHD assumed the sole responsibly to enforce the U.S. Mark, including by preventing counterfeits from being sold through the major online retail platforms.

39.     Further, in direct conformity with its obligations under the Distribution Agreement, Pharma continued to exclusively supply UHD with A313 Goods to keep up with the growing demand created by UHD's efforts.

40.     Due to the ongoing success for both UHD and Pharma's businesses under the Distribution Agreement, on January 30, 2025, the Parties sought to expand and entered into a second trademark assignment that ratified and irrevocably conveyed all right, title, and interest in the U.S. Mark and certain International Marks to UHD and Pharma (the "Second Assignment"). A true and correct copy of the Second Assignment is attached hereto as **Exhibit G.**

41.     The Second Assignment specifically conveyed all right, title, and interest in International Registration No. 1682997 (the "'997 Registration") with the World Intellectual Property Office ("WIPO") designating Mexico, Canada, and the United Kingdom, and Canadian trademark application Serial No. 2310724 (the "'724 Application"), together with all common law rights in the A313 name and its various stylized forms (collectively the "International Mark," and together with the U.S. Mark the "A313 Trademark"). A true and correct copy of the International Registration Certificate for the International Mark is attached hereto as **Exhibit H.**

42.     Critically, the Second Assignment expressly ratified both the Distribution Agreement and First Assignment by defining the term Prior Assignment as follows:

> [Pharma] previously granted and assigned the exclusive rights in the Trademark to UHD for use [in] the United States pursuant to that certain Distribution Agreement and the accompanying Trademark Assignment Agreement.

Second Assignment, Recitals.

43.     The Second Assignment not only ratifies both the Distribution Agreement and First Assignment, but also expands on and makes permanent UHD's rights in the U.S. Mark by stating that,

> Pursuant to the terms of the Assignment and Exclusive Appointment of this Agreement, **together with the rights granted under the Prior Agreement, UHD and its Permitted Assignees shall hereby be the exclusive party within the Territory and the United States** . . .

Second Assignment, Section 4 (emphasis added).

44.     Although Pharma does retain ownership, such interest is especially limited as the Second Assignment provides that:

> [Pharma's] retained interest in the Assigned Mark, as an Assignee, shall be **limited to the sole and exclusive purpose of cooperating and coordinating with UHD** to enforce and protect the Parties right in the Assigned Trademark.

Second Assignment, Section 1 (emphasis added).

45.     Consequently, Pharma's interest in the A313 Trademark, following the Second Assignment, is limited to its obligation to cooperating with UHD to enforce the A313 Trademark.

46.     Similar to the Distribution Agreement, the Second Assignment restricts Pharma's use of the A313 Trademark, providing in relevant part,

> [Pharma] shall not directly or indirectly through any agents, representatives, or distributors, except through UHD hereunder, market, advertise, promote, sell, or distribute the Goods and Services under the Assigned Trademark in the Territory.

Second Assignment, Section 2.

47.     Thus, any attempt by Pharma to directly or indirectly commercialize goods under the A313 Trademark amounts to a breach of the Second Assignment.

48.     To this end, the Second Assignment grants UHD the right to assign or license the A313 Trademark, in its sole discretion. *See* Ex F, Section 3.

49.     Further restricting Pharma's rights to the A313 Trademark, the Second Assignment provides that,

> [Pharma] agrees that is shall not, directly or indirectly, circumvent, avoid, or undermine the rights and interest of [UHD] concerning the Assigned Trademark. **[Pharma] shall not retain, use, license, or otherwise exploit the Assigned Trademark in any manner that conflicts with or diminishes UHD's rights** under the Exclusive Appointment, and further shall not interfere with or disrupt [] UHD's business activities, relationships, or commercial use of the Assigned Trademark.

Second Assignment, Section 5 (emphasis added).

50.     Accordingly, the Second Assignment makes it clear that Pharma has no right to commercialize products under the A313 Trademark, unless it is in cooperation with UHD. *See* Ex G, Section 2 and Section 5.

51.     Moreover, the Second Assignment requires that Pharma provide further assurances, including cooperating as necessary to record the assignment. *See* Ex G, Section 6.

52.     In an effort to continue the successful business relationship, the Parties sought to enter an agreement wherein Mr. Giron, *inter alia*, offered UHD an equity interest in Pharma.

53.     Specifically, on or about October 17, 2025, during one of his trips to meet with UHD in Miami, Mr. Giron and UHD entered into an oral agreement where UHD would acquire 20% interest in Pharma and global rights to the A313 Trademark along with exclusive international commercialization rights in exchange for two-million five-hundred thousand Euros (€2,500,000) (the "Global Assignment Agreement").

54.     At this meeting, the Parties also agreed on the payment terms for the Global Assignment Agreement, which was to be paid over twenty-four (24) months with an initial payment of three-hundred thousand Euros (€300,000) and the remaining two-million two-hundred thousand Euros (€2,200,000) to paid over the twenty-four (24) month period.

55.     Additionally, under the Global Assignment Agreement, Pharma was to remain the sole manufacturer for UHD's global expansion of the goods under the A313 Trademark.

56.     On October 19, 2025, UHD memorialized the oral Global Assignment Agreement through email, detailing the exact terms agreed to between the Parties. A true and correct copy of the Email Confirmation is attached hereto as **Exhibit I.**

57.     Critically, the same day that UHD memorialized the terms of the Global Assignment Agreement, Mr. Giron ratified these terms stating that the Parties were in agreement. *See* Ex. I.

58.     In reliance on the Global Assignment Agreement and Mr. Giron's ratification of the same, UHD took the necessary steps to expand its operations, starting first with the market in Asia.

59.     Shortly after entering the Global Assignment Agreement, UHD expanded resources to relocate one of its Directors to Japan to spearhead and formalize operations in the Asian market.

60.     Notwithstanding the Parties' established history of cooperation and UHD's substantial investment of resources in reliance upon the expanding global partnership, Defendants have recently embarked on a course of conduct that systematically undermines UHD's exclusive rights in the A313 Trademark and A313 Goods.

61.     Specifically, on January 19, 2026, Pharma attempted to improperly and untimely terminate the Distribution Agreement by issuing a notice of termination (the "Notice of Termination"). A true and correct copy of the Notice of Termination is attached hereto as **Exhibit J.**

62.     Since issuing the Notice of Termination, Pharma has demanded that UHD cease use of the A313 Trademark and assign the A313 Trademark back to Pharma, which is directly contrary to UHD's established rights in the A313 Trademark.

63.     Moreover, despite the clear grant of exclusive rights to UHD in the United Kingdom under the Second Assignment, Pharma bypassed UHD and entered into independent distribution contracts with third parties in the United Kingdom without UHD's knowledge or consent. A true and correct copy of the United Kingdom Distribution Agreements are attached hereto as **Composite Exhibit K.**

64.     Furthermore, upon information and belief, Pharma has departed from its established course of dealing and breached the Distribution Agreement by failing to direct commercial leads to UHD as it had done consistently throughout the term of the Distribution Agreement, and which it is obligated to do pursuant to Section 5.01.

65.     Upon information and belief, Pharma is now intentionally diverting these leads to other unauthorized distributors, thereby circumventing and undermining UHD's business activities and the commercial value of the A313 Trademark in direct violation of the Second Assignment.

66.     Moreover, in a further effort to obstruct UHD's rights, Pharma has actively prevented the recordation of the Second Assignment with the WIPO.

67.     Finally, notwithstanding the clear terms of the Global Assignment Agreement and Mr. Giron's express ratification of those terms on October 19, 2025, Defendants have failed and refused to take any steps toward formalizing the global assignment of the A313 Trademark or the transfer of the 20% equity interest to UHD.

68.     This failure persists despite UHD's reliance on the agreement, including the costly relocation of a Director to Japan and the expansion of global operations in furtherance of the Global Assignment Agreement.

## COUNT I – DECLARATORY JUDGMENT FOR
## FIRST ASSIGNMENT AND DISTRIBUTION AGREEMENT
### (Against Pharma)

69.     Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

70.     An actual, substantial controversy exists between the Parties regarding the rights in the U.S. Mark and the obligations under the corresponding Distribution Agreement.

71.     Section 11.02 of the Distribution Agreement required Pharma to vest rights in the U.S. Mark in UHD; importantly, Section 11.02 of the Distribution agreement provides that:

> Simultaneously with the execution of this Agreement, [Pharma] shall execute a Trademark Assignment Agreement . . . to be filed with the U.S. Patent and Trademark Office. Such Assignment shall transfer ownership of any and all Trademarks for the "A313" brand from [Pharma] to [Pharma] and [UHD].

Distribution Agreement, Section 11.02.

72.     Consequently, the First Assignment irrevocably assigns all worldwide right, title, and interest in the U.S. Mark to UHD and Pharma together. *See* Ex C.

73.     Along with the First Assignment, Section 2.01 of the Distribution Agreement appoints UHD as the exclusive distributor for goods bearing the U.S. Mark, and limits Pharma's retained rights in the U.S. Mark, as Section 2.01 states that,

> [Pharma] shall not, directly or indirectly through any agents, representatives or distributors, **except through [UHD],** market, advertise, promote, sell, or distribute the Goods in the Territory.

Distribution Agreement, Section 2.01.

74.     Further establishing UHD's exclusive rights in the U.S. Mark and Pharma's limitation of the same, the Distribution Agreement appoints UHD with the exclusive right to enforce the U.S. Mark, as Section 11.03 provides in relevant part:

> **[UHD] shall have the first right to institute and direct legal proceedings** against any third party believed to be infringing, misappropriating, or otherwise violating a Trademark owned by the parties hereto pursuant to Section 11.02 above and to defend the same form any claim of invalidity or unenforceability in connection therewith. **[Pharma] may, at [UHD]'s sole discretion, participate** in any such Enforcement Action as a co-plaintiff.

Distribution Agreement, Section 11.03 (emphasis added).

75.     Pursuant to Sections 12.01 and 12.02, the Distribution Agreement is set for a 3-year term, with an **automatic renewal for a consecutive 3-year term** *unless UHD terminates*. *See* Ex C, Sections 12.01, 12.02.

76.     Further, Pharma may only terminate the Distribution Agreement, "at the end of the Term" with written notice no less than thirty (30) days prior to the expiration of the term. *See* Ex C, Section 12.06.

77.     If Pharma elects to terminate, Pharma must pay a termination fee, as Section 12.06 of the Distribution Agreement provides that:

> If [Pharma] elects to terminate the Agreement pursuant to this Section 12.06, **[Pharma] shall pay to [UHD] an amount equal to the total sales made by [UHD] under this Agreement during the preceding twelve (12) months.**

Distribution Agreement, Section 12.06 (emphasis added).

78.     Despite the clear terms of the Distribution Agreement, Pharma has attempted to improperly terminate the Distribution Agreement before the end of the term and without payment of the requisite termination fee.

79.     A judicial declaration is necessary and appropriate to determine and declare the Parties' rights in the U.S. Mark and their obligations under the corresponding Distribution Agreement.

WHEREFORE, Plaintiff, US HEALTH DRUGSTORE, INC., respectfully requests that this Court enter a declaratory judgment on the First Assignment and Distribution Agreement in favor of UHD and against Pharma, declaring that:

a.  the Distribution Agreement and corresponding First Assignment are in full force and effect in their entirety as of August 21, 2023;

b.  the First Assignment irrevocably conveyed all right, title, and interests in the U.S. Mark, together with all common law variations thereof to UHD and Pharma;

c.  the Distribution Agreement limits Pharma's retained rights in the U.S. Mark by UHD's exclusive rights granted in the Distribution Agreement;

d.  UHD is the sole and exclusive distributor for goods and services bearing the U.S. Mark in the United States and its territories;

e.  UHD has the exclusive right to enforce the U.S. Mark;

f.  Pharma's Notice of Termination issued on January 19, 2026, is premature and ineffective in terminating the Distribution Agreement pursuant to Section 12.06;

g.  Pharma is bound by the Distribution Agreement to continue to exclusively supply UHD with A313 Goods for the term, as defined by Sections 12.01 and 12.02 of the Distribution Agreement, unless and until Pharma properly terminates pursuant to Section 12.06;

h.  to properly terminate the Distribution Agreement under Section 12.06, Pharma must provide notice no less than thirty (30) days prior to the expiration of the term

on August 21, 2026, and pay the requisite termination fee, as set forth in the Distribution Agreement; and

i.   if Pharma does not properly terminate by providing notice no less than thirty (30) days prior to the expiration of the term on August 21, 2026, and paying the requisite termination fee, the Distribution Agreement automatically renews for another 3-year term pursuant to Section 12.02.

## COUNT II – DECLARATORY JUDGMENT FOR SECOND ASSIGNMENT
### (Against Pharma)

80.   Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

81.   An actual, substantial controversy exists between the Parties regarding their rights in the A313 Trademark.

82.   The Second Assignment irrevocably assigns all worldwide right, title, and interest in the A313 Trademark to UHD and Pharma together, and expressly ratifies both the Distribution Agreement and First Assignment by defining the term Prior Assignment as follows:

[Pharma] previously granted and assigned the exclusive rights in the Trademark to UHD for use [in] the United States pursuant to that certain Distribution Agreement and the accompanying Trademark Assignment Agreement.

Second Assignment, Recitals.

83.   The Second Assignment not only ratifies the Distribution Agreement and First Assignment, but it also expands on UHD's rights in the U.S. Mark and made UHD's exclusivity of the A313 Trademark permanent, as Section 4 states:

Pursuant to the terms of the Assignment and Exclusive Appointment of this Agreement, **together with the rights granted under the Prior Agreement, UHD and its Permitted Assignees shall hereby be the exclusive party within the Territory and the United States** . . .

Second Assignment, Section 4 (emphasis added).

84.     Although Pharma does retain ownership, such interest is expressly limited to the purpose of cooperating and coordinating with UHD, as the Second Assignment provides that:

> [Pharma's] retained interest in the Assigned Mark, as an Assignee, shall be **limited to the sole and exclusive purpose of cooperating and coordinating with UHD** to enforce and protect the Parties right in the Assigned Trademark.

Second Assignment, Section 1 (emphasis added).

85.     Further, the Second Assignment restricts Pharma's use of the A313 Trademark, providing in relevant part,

> [Pharma] shall not directly or indirectly through any agents, representatives, or distributors, except through UHD hereunder, market, advertise, promote, sell, or distribute the Goods and Services under the Assigned Trademark in the Territory.

Second Assignment, Section 2.

86.     To this end, the Second Assignment grants UHD the right to assign or license the A313 Trademark, in its sole discretion. *See* Ex F, Section 3.

87.     Further restricting Pharma's right in the A313 Trademark, the Second Assignment provides that,

> [Pharma] agrees that it shall not, directly or indirectly, circumvent, avoid, or undermine the rights and interest of [UHD] concerning the Assigned Trademark. **[Pharma] shall not retain, use, license, or otherwise exploit the Assigned Trademark in any manner that conflicts with or diminishes UHD's rights** under the Exclusive Appointment, and further shall not interfere with or disrupt [] UHD's business activities, relationships, or commercial use of the Assigned Trademark.

Second Assignment, Section 5 (emphasis added).

88.     Accordingly, the Second Assignment makes it clear that Pharma has no right to commercialize products under the A313 Trademark unless it is in cooperation with UHD. *See* Ex F, Section 2 and Section 5.

89.     Moreover, the Second Assignment requires that Pharma provide further assurances, including cooperating as necessary to record the assignment. *See* Ex F, Section 6.

90.     Nevertheless, Pharma has taken measures to interfere with UHD's exclusive rights in the A313 Trademark by entering distribution agreements in the United Kingdom.

91.     A judicial declaration is necessary and appropriate to determine and declare the Parties' rights under the Second Assignment.

WHEREFORE, Plaintiff, US HEALTH DRUGSTORE, INC., respectfully requests that this Court enter a declaratory judgment on the Second Assignment in favor of UHD and against Pharma, declaring that:

a.   Pharma's retained rights in the A313 Trademark are limited to the sole and exclusive purpose of cooperating and coordinating with UHD to enforce and protect the A313 Trademark;

b.   aside from Pharma's limited retained rights in the A313 Trademark, UHD owns the exclusive right, title, and interest in the A313 Trademark;

c.   UHD has the sole and exclusive right to commercialize the A313 Trademark including the right use, reproduce, modify, display, distribute, license, sublicense, and otherwise commercially exploit the A313 Trademark in connection with marketing, advertising, manufacturing, promoting, imparting, or selling goods and services;

d.   UHD has the sole and exclusive right to hold itself out as the exclusive owner, source, manufacturer, distributor, seller, representative or provider of goods and services under the A313 Trademark; and

**EPGD ATTORNEYS AT LAW, P.A.**
777 SW 37th Ave., Suite 510, Miami, Florida 33135 • T: (786) 837-6787 | F: (305) 239-3640 • www.epgdlaw.com

e.   Pharma is obligated to provide further assurances to UHD, including cooperate with UHD to record the Second Assignment with WIPO.

## COUNT III – BREACH OF CONTRACT (SECOND ASSIGNMENT)
### (Against Pharma)

92.   Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

93.   The parties entered into the Second Assignment to convey worldwide right, title, and interest in the A313 Trademark to UHD and Pharma together.

94.   As part of the Second Assignment, UHD has the sole and exclusive right to commercialize goods under the A313 Trademark in the United Kingdom, Mexico, Canada, and the United States and its territories. *See* Ex G, Section 4.

95.   The Second Assignment obligates Pharma to provide further assurances, including cooperating with the recording of the Assignment. *See* Ex G, Section 6.

96.   Pharma has breached the Second Assignment by entering into distribution agreements with certain third parties in the United Kingdom. *See* Ex K.

97.   Pharma has further breached the Second Assignment by refusing to cooperate with the recording of the assignment with WIPO as required by the Further Assurances clause. *See* Ex G, Section 6.

98.   As a result of Pharma's breaches, UHD has suffered damages in the loss of exclusivity in the A313 Trademark and the obstruction of UHD's right to officially record and protect its interest.

WHEREFORE, Plaintiff, US HEALTH DRUGSTORE, INC., respectfully requests this Court enter a judgment against Defendant, PHARMA DEVELOPPMENT, SAS, for general and

special damages, pre-and post- judgment interest, costs, and any other relief this Court deems just and proper.

### COUNT IV – DECLARATORY JUDGMENT FOR GLOBAL ASSIGNMENT AGREEMENT
#### (Against Mario Giron)

99.     Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

100.    An actual, substantial controversy exists between the parties regarding their rights in the Global Assignment Agreement.

101.    On or about October 17, 2025, Mr. Giron and UHD verbally entered into the Global Assignment Agreement, where UHD would acquire 20% interest in Pharma and global rights to the A313 Trademark, along with exclusive international commercialization rights, in exchange for two-million five-hundred thousand Euros (€2,500,000).

102.    The €2,500,000 was to be paid over twenty-four (24) months with an initial payment of three-hundred thousand Euros (€300,000) and the remaining two-million two-hundred thousand Euros (€2,200,000) to paid over the twenty-four (24) month period.

103.    Additionally, under the Global Assignment Agreement, Pharma was to remain the sole manufacturer for UHD's global expansion of the goods under the A313 Trademark.

104.    On October 19, 2025, UHD memorialized the oral Global Assignment Agreement through email, memorializing the exact terms agreed to between the Parties. *See* Ex I.

105.    Mr. Giron ratified these terms, stating that the Parties were in agreement. *See* Ex. I.

106.    A judicial declaration is necessary and appropriate to determine and declare the rights under the Global Assignment Agreement.

WHEREFORE, Plaintiff, US HEALTH DRUGSTORE, INC., respectfully requests that this Court enter a declaratory judgment on the Global Assignment Agreement in favor of UHD and against Pharma, declaring that:

    a. the Global Assignment Agreement is a valid and enforceable agreement that was entered between Mr. Giron and UHD on October 17, 2025, and further ratified in writing on October 19, 2019;

    b. under the Global Assignment Agreement, Mr. Giron is to assign 20% interest in Pharma to UHD and a execute a global assignment of the A313 Trademark, granting exclusivity in the remaining territories not previously assigned to UHD, and UHD is to pay two-million five-hundred thousand Euros (€2,500,000) in exchange; and

    c. the purchase price of two-million five-hundred thousand Euros (€2,500,000) is to be paid over twenty-four (24) months with an initial payment of three-hundred thousand Euros (€300,000) and the remaining two-million two-hundred thousand Euros (€2,200,000) to paid over the twenty-four (24) month period.

## COUNT V – BREACH OF ORAL AGREEMENT
### (Against Mario Giron)

107.   Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein

108.   UHD and Mr. Giron verbally entered into the Global Assignment Agreement wherein and UHD agreed that UHD would acquire exclusive global rights in the A313 Trademark and 20% interest in Pharma for €2.5 million with €300,000 due at signing and €2.2 million due thereafter over a period of twenty-four (24) months.

109.    On October 19, 2025, the Parties memorialized the terms of the Global Assignment Agreement via email, with UHD detailing the terms and Mr. Giron promptly ratifying his understanding and agreement to the terms. *See* Ex I.

110.    Mr. Giron has failed to convey the 20% interest or execute the necessary assignment to grant UHD the exclusive global rights in the A313 Trademark as required by the Global Assignment Agreement.

111.    As a result of Mr. Giron's breach, UHD has suffered damages.

WHEREFORE, Plaintiff, US HEALTH DRUGSTORE, INC., respectfully requests this Court enter a judgment against Defendant, MARIO GIRON, for general and special damages, pre- and post- judgment interest, costs, and any other relief this Court deems just and proper.

## COUNT VI – PROMISSORY ESTOPPEL
### (Against Mario Giron)
### *in the alternative*

112.    Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

113.    Under the Global Assignment Agreement, Mr. Giron represented that UHD would acquire exclusive global rights in the A313 Trademark and 20% interest in Pharma in exchange for €2.5 million.

114.    On October 19, 2025, immediately following UHD's memorializing the terms of the Global Assignment Agreement via email, Mr. Giron ratified the terms of agreement. *See* Ex I.

115.    In reliance on Mr. Giron's representation, UHD took the necessary steps to expand its operations, including expending significant resources to relocate one of its Directors to Japan to spearhead and formalize operations in the Asian market.

116.   Despite UHD taking reasonable measures in reliance on Mr. Giron's representations and endeavoring to perform its obligations under the agreement, Mr. Giron has failed to convey the 20% interest or execute the necessary assignment to grant UHD the exclusive global rights in the A313 Trademark.

117.   Consequently, UHD has detrimentally relied on Mr. Giron's representations and has suffered and continues to suffer damages as a result.

WHEREFORE, Plaintiff, US HEALTH DRUGSTORE, INC., respectfully requests this Court enter a judgment against Defendant, MARIO GIRON, for general and special damages, pre- and post- judgment interest, costs, and any other relief this Court deems just and proper

## COUNT VII –PRELIMINARY AND PERMANENT INJUNCTION
### (Against All Defendants)

118.   Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

119.   UHD is likely to succeed on the merits of its claims concerning the Declaration of Rights under First Assignment and Distribution Agreement because Pharma executed the First Assignment irrevocably conveying all rights in the U.S. Mark to UHD and UHD duly recorded it with the USPTO on July 27, 2023; and the Distribution Agreement appoints UHD as the exclusive distributor in the United States and severely restricts Pharma's retained rights by prohibiting Pharma from marketing, advertising, promoting, selling, or distributing the goods and services under the U.S. Mark except through UHD.

120.   Additionally, UHD is likely to succeed on the merits of its claims on the Declaration of Rights under the Second Assignment because that Second Assignment: (i) conveyed all rights in the International Mark to UHD; (ii) ratified and expanded UHD's rights under the prior First Assignment and Distribution Agreement; (iii) limited Pharma's retained interest to cooperation in

enforcement; (iv) prohibited Pharma from exploiting the Assigned Trademark except through UHD; and (v) required Pharma to provide further assurances including cooperation in recordation of the Second Assignment.

121.    Further, UHD is likely to succeed on the merits of its claims on the Declaration of Rights under the Global Assignment Agreement because Mr. Giron and UHD orally agreed that UHD would acquire exclusive global rights in the A313 Trademark and 20% interest in Pharma in exchange for €2.5 million, and UHD memorialized this understanding via email where Mr. Giron ratified these terms.

122.    UHD faces irreparable harm absent injunctive relief because Defendants' ongoing interference with UHD's exclusive rights has caused and continues to cause harm to UHD's business, brand, reputation, and goodwill in the A313 Trademark, and because Pharma has undertaken actions to undermine UHD's exclusivity, including attempting to terminate the Distribution Agreement prematurely, entering into independent distribution agreements in the United Kingdom, diverting leads, and obstructing recordation of the Second Assignment.

123.    The balance of equities favors UHD, and injunctive relief is in the public interest because the requested injunction preserves contractual and trademark rights, prevents market confusion and disruption of established channels, and enforces express contractual obligations that protect trademark integrity.

124.    UHD has no adequate remedy at law for the loss of control over the A313 Trademark, marketplace exclusivity, and associated goodwill because such injuries are difficult to quantify and are ongoing.

WHEREFORE, Plaintiff, US HEALTH DRUGSTORE, INC., respectfully requests that this Court enter a Preliminary and Permanent Injunction against Defendants, and order as follows:

a.  Ordering Pharma to specifically perform and comply with the Further Assurances clause of the Second Assignment, including by promptly cooperating with UHD and executing all documents reasonably necessary to effect and record the Second Assignment with WIPO and applicable national offices.

b.  Enjoining Pharma, and all persons in active concert or participation with Pharma having notice of the injunction, from directly or indirectly marketing, advertising, promoting, selling, distributing, or otherwise commercializing goods or services bearing the A313 Trademark in the United States except through UHD, and from violating any provision of the Distribution Agreement, during the term as defined therein.

c.  Enjoining Pharma, and all persons in active concert or participation with Pharma having notice of the injunction, from directly or indirectly marketing, advertising, promoting, selling, distributing, licensing, or otherwise exploiting the A313 Trademark in the United Kingdom, Mexico, and Canada except through UHD, and from taking any action that circumvents, avoids, interferes with, or undermines UHD's rights under the Second Assignment, including entering into any distribution or licensing agreements regarding the A313 Trademark without UHD's authorization.

d.  Enjoining Defendant, Mario Giron, and all persons in active concert or participation with him having notice of the injunction, from transferring, selling, pledging, encumbering, assigning, or otherwise alienating or disposing of the 20% equity interest in Pharma that was promised to UHD, pending final adjudication of UHD's

claims, and requiring preservation of all records and documents relevant to that equity interest.

e.   Granting such other and further injunctive relief as is necessary to preserve the status quo and protect UHD's contractual and trademark rights during the pendency of this action

Date: February 16, 2026.

Respectfully submitted,

EPGD Attorneys at Law, P.A.
*Attorney for Plaintiff*
777 SW 37th Ave., Ste. 510
Miami, Florida 33135
T: (786) 837-6787
F: (305) 718-0687

By: /s *Madison E. Mathews*
Madison E. Mathews, Esq.
Florida Bar No.: 1069379
Benjamin L. Bedrava
Florida Bar No.: 113804